May it please the Court, my name is Mark Forsberg, I represent the Church in this case. I think the primary issue that I think is important to discuss at the outset of this is whether under the Religious Land Use and Institutional Persons Act a significant or substantial burden has been imposed on this church by Douglas County. There are two cases decided in this circuit, Foursquare Gospel v. San Leandro and Guru Nanak v. Sutter County that I think are dispositive of all the questions that arise under the Act in this case. In Foursquare and Guru Nanak, a substantial burden is one that is described as a significantly great restriction upon the exercise of religious practice. The circuit has established in those cases, too, that it's going to review the facts of each case individually to determine whether the burden is actually substantial for that particular church. Before you get deeply into that argument, I'd like to ask a sort of preliminary question. We've got requests for judicial notice that your client has sold the particular parcel in question and further that your client has bought another parcel and they've received permission from the county to build a church on that parcel. Is that true? It is true. And any objection to our taking judicial notice on those two things? I think that it's appropriate for you to take judicial notice of the fact that the permit has been approved by the county recently. I believe in November of this year. Right. Those documents are very recent. And further, the original parcel in question has been sold. Correct. So we can take judicial notice of both of those things? Yes. Okay. And so in that regard, I think that So that means what you have is a damages suit. You do not have an injunction suit. Right. And as of yesterday, I submitted a case to the court under the appropriate rule, identifying a case that discusses what the proper action is where that's the case, where in that case injunctive relief was sought to compel the county to issue a permit. That would certainly have been the intention in this case when we filed our petition for judicial review in the state court. But in the new case, which is Nuevas v. City of Yuma, the court said that the damages aspect did not moot the case. Now I'm trying to figure out what substantial burden means in the context of a case where a church seeks zoning approval, is denied zoning approval. Does the mere fact of denial of zoning approval on a parcel produce a substantial burden, or do you need more? I don't think the mere fact of a denial is sufficient. These cases, both Foursquare. So what do you need more than that? Well, we need to look at the individualized facts of the case. And the courts have indicated in Foursquare and Guru-Nanak that where there is delay, expense, and uncertainty, that's engendered. Now, this was pretty fast. I mean, I used to teach property law. I'm accustomed to these things being dragged out for a very long time. They were pretty quick. Well, you know, being executed quickly is. I don't think there was delay. What else would count? Well, there's expense involved.  and selling the property that was denied. Right. Now, would that be anything other than entailed in the ordinary course of events where the church seeks zoning approval and is denied? Is this taken out of the ordinary denial, in other words? Well, under the circumstances of the case, when you look at the reasons for the denial and the way the county processed it, then I think it becomes a significant burden because these other things that the church had to do were unnecessary. They're not. The expenses and delays and uncertainty don't apply to the first lead-up to a denial. We understand that that's a potential part of the process. But in this case. What in this case makes this one special? What makes it different from an ordinary denial that just happens? The fact that it's unsupported by the county law and it's a significant burden where, as in this case, the church has to go out after a denial knowing that the county now, as it did this time, could deny a future permit application simply because members of the board of county commissioners said it's incompatible. Even though their county code says it has predetermined that it is compatible. So that creates uncertainty that they'll ever get a permit in the future. But then, I mean, I guess what is the relevance of the fact that they did get another site? I mean, I guess can we take into account the fact that they have now found another location and apparently been approved as relevant to the substantial burden question? I don't think it's relevant to whether the initial denial imposed a substantial burden or a significant burden, a significant restriction. It did. The fact that after three years they have found another location still supports the idea that that initial denial imposed a significant restriction and a substantial burden because of all the things they've had to do since then. Just as in the other cases, San Leandro and Guru Nanak, those churches also had to go through these issues as well. But in those cases, I mean, in Guru Nanak, they tried to site in town and were denied and they tried to site out of town and the board said, well, that's too far away. So they had tried multiple places. In Foursquare, we said that it wasn't clear that there would be other suitable sites. So those cases do suggest that if you're denied at location A and almost as good location B is available to you, the reasoning of those cases suggests that that wouldn't be a substantial burden, doesn't it? No, I don't think those cases stand for that. I think those cases stand for the fact that where these denials are unsupported or based on vague or repeatable reasons that are sort of undefinable in a way, in Guru Nanak it was called leapfrog development. In this case that's before you today, it's called incompatible. Without any justification for saying it's incompatible, that is the substantial burden that's imposed. The substantial burden is what they have to do going forward. And I would note that the district court followed that line of reasoning too, and I think it's wrong because the district court said, well, in this case, you didn't have to wait a year to get approval, and therefore I don't have to consider Foursquare because the facts are so much different. But the burden on this church can be completely different than the burden on a 4,000-member congregation seeking to build an edifice of that nature in a city. This is a tiny congregation that owned an acre of land in an area that the county code predetermined was compatible for a church use if the use was mitigated. And the county staff decided that it was mitigated, and the county commission determined that it was incompatible without explaining why. That's exactly what happened in Guru Nanak, and there's still a substantial burden on that church. There are a couple of different things going on there in what you said. One is that this was done without sufficient justification under Nevada law, and the other is the result was a substantial burden. Now, I'm not sure that the first question, as to say what was the justification under Nevada law, affects the second question, as to what the burden was on your client. Help me understand the relationship between those two things. Well, I don't think those two things should be confused. Substantial evidence to support a decision is the Nevada standard for testing whether. . . And that's in the question of Nevada law. That's another question. Right. This is a question of whether this denial placed a substantial burden on the church. Right. But you were trying, as I understood you at least, maybe incorrectly, you were arguing in support of the substantial burden issue that they didn't have a very good reason to do this. That sounds like an argument that they violated Nevada law. It is. It also doesn't create or mean necessarily that there's a substantial burden, whether they have the justification. That does go to the second part of the second and third parts of the analysis under the Religious Land Use Act, which is is there a compelling government interest in the reason for the denial and is it the least restrictive method of furthering that goal. But I think that the substantial burden issue is a predicate to addressing those other two things. I also think that the way the county commission and the county planning commission address this supports our substantive due process claim because it renders these decisions arbitrary. They don't follow their own code. They don't follow their own traffic standards. And yet they find them compatible on the basis of traffic and issues that they've already, the code dictates they treat differently than that. Well, but they're not rubber stamps. So you can have traffic studies, you can have all sorts of administrative studies, and ultimately you have a decision-making body that can decide how much weight, after hearing public opinion, that it wants to give to its own internal studies. That's the way it works. The studies that were done, the investigation that was done by the county in this case, determined that traffic was so insignificant that it didn't even require a traffic study. After the denial by the planning commission, the church, sensing that this was going to be a big issue, commissioned a traffic study at its own expense. There is no evidence provided in the public opinion portion of it or the public comment to refute the facts of a traffic study. I think those are facts. Those are scientifically or empirically generated information. Whereas the public comment was vague concerns about traffic. No one distinguished between the traffic that occurs at a nearby intersection during a week, during rush hour, with the actual time that this church would operate on Sunday morning, when there's virtually no traffic. This is an essentially rural area. This is not an area where there's enormous traffic or that the intersection is dangerous. But people got up and said that because they don't want to see this approved. That was similar to the way Sian Leandro reacted, which was to essentially capitulate to a few people arguing that the use was inappropriate. How do you know that? I mean, you know, traffic studies can be good. They can not be good. They can take into account certain things, not take into account other things. That was my sort of rubber stamp comment. You know, you're still going to have more information, and that can come by way of public comment, which is what happened here. So how do you determine that it's appropriate to discount that public comment? Well, I disagree with your characterization of what a traffic study does. A traffic study is performed in a manner that's established by a national organization of traffic engineers. They've developed enormous empirical data about how much traffic is generated by myriad uses, and they've created a way of determining, based on the circumstances, what the traffic is going to be. And in this case, they did that. The contrary public comment is not evidence at all. It's people saying, I think this is going to really increase traffic a lot. Well, I don't think that's evidence that's sufficient to overcome the evidence of a traffic study, especially when the county code itself would not permit traffic to be an issue in the decision about this special use permit because it's so small that it doesn't meet the county's own standards to make it harmful to the neighborhood. So, I mean, public comment, the Nevada Supreme Court has also struggled with this. They've said, oh, yes, public comment is substantial evidence to support a decision, but if you read the cases, the substantial evidence is always supported by other information that corroborates it, not just a person. How much public comment can there be? How much negative comment is sufficient to overcome a traffic study? Nobody, no public comment said that on a Sunday morning this traffic would be impactful on their neighborhood or that it would make it more dangerous or that it would contribute anything to the weekday traffic at the intersection nearby. Okay, you're down to about 15 seconds. I'm stopping right now. We'll make sure, however, that you get a sufficient time to respond. Okay, thank you. Good morning. May it please the Court. I'm Charlie Bertram. I represent Douglas County, the appellees in this matter. This case started out as what seemed to be a fairly generic petition for judicial review regarding the denial of a special use permit to build a church on about a 1.28-acre parcel of residentially zoned real property in Douglas County. Did it require a zoning change or just a permit? A special use permit. So there was no zoning change. The zoning is one acre minimum, and it's residential. And under the county code, a church is a use that can be in a residential area. We see a lot of churches in residential areas everywhere, and that's where the people are. And so it is. However, just because it is something that can be permitted doesn't mean it has to be permitted. It still has to go through a process to determine whether it's compatible, whether it's going to impact the neighborhood, the community, traffic patterns, those sorts of things. So it did. It started out as that. Then the ARLUPA, the religious land use arguments, began to come up. I kind of look at this as a there is the Nevada issues, the Nevada law issues. Is there substantial evidence to support the denial of the special use permit? So there's that issue. Then there's the ARLUPA kind of overlay over the whole thing. And council correctly identified what a substantial burden is under controlling Ninth Circuit law, and there's no dispute about that. There's also no dispute that these decisions under ARLUPA and also under state law are very site-specific. And so I think it's important, since traffic is really the overriding issue regarding the denial, I think it's very important to understand kind of the traffic patterns in this area. And I don't know how the court's copies of the record were. Some of mine were really washed out. You couldn't read them very well. But you saw some maps, and the 1.28-acre parcel. And by the way, the project itself was there was already a house on the property. That was going to remain as a parsonage for church use. Then there was going to be a 5,000-square-foot new church facility built. That was going to have a sanctuary, going to have a fellowship hall, which was still within the 5,000 square feet, a kitchen, a warming kitchen, a cry room, and 65 paved parking spots on this 1.28-acre parcel. Now, the traffic in the area is there's four streets. This property is bordered by four streets. There's a street called Riverview, and Riverview comes up and makes a little, it's on the east side of the property, and there's a cul-de-sac. And so it ends. That's where the ingress and egress to the church was going to be. Then there's a very short street called Carina, which is down at the bottom. It's on the south side. Then there's another street called Dresslerville, which is a fairly major street in the Gardnerville Ranchos area where this is located. So the ingress and egress was going to be on essentially a dead-end street. Correct. It's a dead-end street that has a couple houses, two or three houses, because these are fairly large lots, one-acre minimums. And so right across the street, the dead-end street from the church are houses. Now, that street wasn't always a dead-end street. At one point in time, Riverview went through at some, and this is in the record that one of the public commenters said that the county had foresight to cut that out and make that into a cul-de-sac because you're also dealing with an area that has, well, I got three sides. The fourth side is a street, another street called Riverview. So there are actually non-contiguous Riverview streets. There's Riverview that comes up a hill and makes a curve on the north side of the property. They used to connect. They don't anymore. And then that connects over to Dresslerville. So it's a complicated kind of convoluted street system. And there's a big intersection. It's a T-intersection of Dresslerville, and this is why this is very site-specific, Dresslerville and Riverview. And Riverview actually dead-ends, and then Dresslerville makes a left-hand turn. At any rate, during the public comment section in front of the Board of County Commissioners, there was a lot of specific comments made about the traffic patterns in the area. And these were not just, gee, we don't like it, we don't want this in our backyard, the nimby type of arguments. This is already an area which is problematic. I've listed some of these comments from various folks. Folks called the area a mess. They called it a disaster. They called it challenging. They called it an accident waiting to happen. There was a blind corner, and that would be on the Riverview side. Very, very busy. A dangerous thing. Area with slopes and steep hills. That's primarily Riverview coming up the hill, an area where cars slide off the road on ice and with a bunch of them ending up in the bottom. One commissioner actually made the comment that this is, like, the worst place in the county he could even consider a church being located because of those concerns. Another commissioner, Commissioner Johnson, who was the chairman, said that the area had been dangerous for as long as he could remember. And so there was a very specific reason given, reasons given, for why a church simply was not a proper facility to be put here. And, again, I mentioned the fact that the church, it isn't an inconsequential facility when you're talking about 5,000 square feet and when you're talking about 65 parking places. Now May I ask, is the substantial evidence question even before us at this point? Because a lack of substantial evidence would be a basis to set aside the decision, but we can't. There's no live controversy over that. All we have is the RLUIPA damages. I don't think so because the district court below in his, Judge Hicks in his order, had a very long segment of discussion on substantial evidence under Nevada state law. Well, I know he did, and I think it would be before us, but my question is, hasn't that been mooted by the sale of the property? Because there's no, we can't direct the issuance. That's a good point. That's probably a good point. Probably the, those issues came up pretty recently, and I haven't completely worked them all the way through my brain, but that's probably true. Since substantial evidence goes to whether or not a special use permit should be granted, the fact that that cannot happen anymore probably makes substantial evidence a complete irrelevancy. However, I still think that the very same considerations come in under the ALUIPA, RLUIPA argument. And why is that? Because RLUIPA speaks to burden rather than justification for the decision. It speaks of burden. And the burdens, well, but a burden is, I think, in order to help you. Pardon me? I was trying to help you. Thank you. I think the burden, the way that the court and counsel identified the Guru Nanook and the Foursquare cases as the two big cases, and I think those are the guiding lights for us to look at in determining what a burden is under RLUIPA. And when you look at, for instance, the Foursquare case, that took 14 months, I believe, from start to finish. It involved situations where City of San Leandro met with church folks. They had zoning changes and overlays and all kinds of other things with meetings and public hearings and, I mean, literally well over a year of delays, cost, expenses. The church had to spend, what was it, $110,000, at least that's in the record, in the court decision, maybe even more, I don't know, in order to buy the property. And so there were a lot of time delays and everything else. Also, when we're talking about burdens, are there other facilities available? Are there other properties available? We know that the church now has a property that it is beginning to work through. In the San Leandro case, it's interesting because that one, there were 196 potential properties, none of which there was evidence in the record from a deposition of a realtor that not a single one of those properties was available, would have served the church's purposes. Here, we know that at the time that the application was made in 2016, the church had a property. It was operating about three-quarters of a mile away at another facility at 921 Mitch Street. That facility had gotten a major variance a couple of years before that to expand, and that had gone through the system just fine, which I think speaks to the fact that this is not a discriminatory county. This church had already at one point in time received approval to do that. Now, the record doesn't explain why two years later they went to another facility or wanted another facility, so we can only guess on that. Now, Guruk Nanuk is also another burden case, and it's an important case for our purposes because they started out in the city or in a residential area. They were denied the permit. It was a conditional use permit to operate or to build a Sikh temple on that facility, and it was like, go west, young man. Go outside the city. And so they did, and they bought a big 30-acre parcel outside the city, and they didn't sue, they didn't challenge the first denial, and so they went out from the city or out into the country, and all of a sudden out in the country people are saying, oh, there's going to be too much traffic, too much noise. It's going to mess up the agricultural nature of the community, and we don't want it out here. And so they were denied out there. That gave rise to kind of, I look at it as a serial denial type of situation, almost a bad faith situation in that no matter where the Sikh temple sought to build their facility, there was going to be some objection that was going to cause a denial. The specific objection that occurred in the Yuba City case, or in the Yuba County case, sorry, County case, was leapfrog development. Leapfrog development, as I understand it, is, you know, concentric development goes out slowly. Leapfrog goes out and then starts to come back. It's kind of a, I don't know, an esoteric concept, and it's also something that can be applied in all kinds of variety of places. The Ninth Circuit in that case noted that the net effect of the denials limited down the available space for the church. And so I think there was a little bit of bad faith. Coming back to our situation, there is no evidence of any sort of discriminatory conduct. There is no evidence of anything to indicate that the decision of the Board of County Commission wasn't anything other than a sound zoning and planning decision that a zoning board or a board of county commissioners is entitled to make. Our LUPA is not a cudgel or a sledgehammer, which will allow a church to come into any community, build anything it wants, without regard to what the zoning is. It's very clear that the statute envisioned that churches would still have to go through that process. And that's the way that it worked in Douglas County, and we believe that the denial did not violate any of the provisions of our LUPA. Thank you. Thank you, Your Honor. Tanya, would you put two minutes on the clock, please? Thank you very much. I'd refer you to Foursquare, where the court held that where a church has no ready alternatives or the alternatives require substantial delay, uncertainty, and expense, a denial can be a substantial burden. The first denial, any denial, if those are the hallmarks of it. In this case, taking judicial notice of the time that the subsequent permit was issued to the church, you can see delay, expense, and uncertainty. In Guru, the court held that and emphasized that this is a strict scrutiny kind of analysis that we're doing here, and it's on a case-by-case basis. So each case is going to be different. In no case, Guru doesn't set a standard that says it's not a substantial burden if you only have one denial or if you have less than two. And San Leandro doesn't say that if it takes more than a certain amount of time, that's what you need to prove to have a substantial burden. Getting executed quickly does not mean that the proper procedures was followed. So that's the case there. So I think if you just look at Guru Nanak, it's very similar factually to this case, except for the fact that they were denied twice. The very same things happened. And one of the things the court said there is the fact that the reasons given were sort of undefinable and the fact that they ignored the mitigation steps that that church had taken make it significantly less likely or uncertain that a future permit would be granted in that kind of a situation. That's part of the burden, and that's why strict scrutiny is so important is because these kinds of ordinances can be unevenly applied, as they were here, unevenly applied compared to other churches throughout the county that got special use permits no matter how much traffic they generated. Guru Nanak, it followed the exact reasoning that's necessary to find a substantial burden here. Okay. Thank you very much. Thank both sides for your arguments. Pentecostal Church of God v. Douglas County now submitted. And that concludes our arguments for this morning. Thank you for your patience, all of you students who are watching, and we are now in adjournment for the day.
judges: W. Fletcher, Miller, Pregerson